**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:22-cv-02409

NEGA NAIZGI,

    Plaintiff,

v.

HSS, INC.,

    Defendant.

---

## ORDER

---

Pending before the Court is Defendant HSS, Inc.'s Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint or in the Alternative Stay the Litigation Pending Resolution of Arbitration ("Motion to Compel Arbitration"), ECF No. 9. For the reasons stated below, the Court GRANTS IN PART the Motion to Compel Arbitration.

### I.  BACKGROUND

On September 19, 2022, Plaintiff Nega Naizgi ("Plaintiff") filed a complaint and jury demand, bringing claims against his former employer, Defendant HSS, Inc. ("Defendant"), for (1) race and national origin discrimination in violation of Title VII, the Colorado Anti-Discrimination Act ("CADA"), and 42 U.S.C. § 1981, ECF No. 1 ¶¶ 59–66; (2) retaliation in violation of Title VII, CADA, and 42 U.S.C. § 1981, *id.* ¶¶ 67–75; and (3) discrimination and retaliation in violation of the Family and Medical Leave Act ("FMLA"), *id.* ¶¶ 76–79.

In response, Defendant moved to compel arbitration based on the Arbitration Agreement (the "Agreement") executed by Plaintiff on June 6, 2006. ECF Nos. 9, 9-1. Defendant contends that the Federal Arbitration Act ("FFA") requires enforcement of the Agreement because the Agreement is an enforceable agreement to arbitrate, and the Agreement covers Plaintiff's claims. *Id.* Under the Agreement, Plaintiff agreed to:

> [U]tilize the Responsive Resolution Program ("RRP") to pursue any pre-employment, employment, or post-employment dispute, claim, or controversy against [Defendant] regarding any unlawful act regarding my application for employment, employment, the termination of my employment or any other post-employment conduct . . . including, but not limited to, claims under Title VII of the Civil Rights Act of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; . . . the Family and Medical Leave Act; [and] . . . any state anti-discrimination statutes . . . ."

ECF No. 9-1 at 1.

Plaintiff responded in opposition, arguing that the Agreement is invalid both procedurally and substantively and requesting that the Court invalidate the Agreement or, alternatively, order limited discovery into the Agreement's formation and validity. ECF No. 12 at 2.[1] Defendant replied, disputing Plaintiff's arguments of invalidity. ECF No. 16.

## II.   LEGAL STANDARD

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 1 *et seq*. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

---

[1] Naizgi received an extension of time to file his opposition motion, up to and including December 19, 2022. ECF No. 11. The brief was timely filed, but on December 20, 2022, Naizgi filed an amended brief in opposition to the motion to compel. ECF No. 13. The amended brief only contains one correction – amending the statement that Naizgi is "a Ghanaian immigrant," as stated in the original opposition motion, to state that he is an "Ethiopian immigrant." ECF No. 13 at 1. The Court takes note of this correction, but because it is not material to the Court's decision, Naizgi's otherwise duplicative amended opposition brief, ECF No. 13, is STRICKEN as untimely.

contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

"The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedone Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). When considering a motion to compel arbitration, the Court employs a two-step process: first, the Court must determine whether there was an agreement that provides the moving party with a right to compel arbitration. Second, the Court considers whether the allegations in the complaint are within the scope of the arbitration agreement. *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018). If the Court determines that a suit is subject to an arbitration agreement, it shall "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

### III.  ANALYSIS

Plaintiff argues that the Court should deny the motion to compel arbitration for two primary reasons. First, Plaintiff argues that there was no contract formation because the

Agreement lacks a meeting of the minds and Defendant's obligations under the Agreement are illusory. ECF No. 3-7. Second, Plaintiff argues that the Agreement's one-year limitations provision, the parties' unequal bargaining power, and Defendant's illusory promises render the Agreement unconscionable. *Id.* at 7-14. Alternatively, if the Court is not persuaded that the Agreement is invalid, Plaintiff asks the Court to permit limited discovery to determine the Agreement's validity. *Id.* at 14-15. Plaintiff does not dispute that if the Agreement is valid, then the allegations in the complaint are within the scope of the Agreement.

### A.   Delegation of Arbitrability

As an initial matter, this Court must determine if it has the power to rule on the issues raised by Plaintiff or if the issues should be decided by the arbitrator. The question of who has the power to decide arbitrability depends upon what the parties have decided. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). The Supreme Court has held that "when parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability . . . ." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (citing *Rent-A-Center*, 561 U.S. 63, 68-79 (2010)). Arbitrability disputes "include questions such as 'whether the parties are bound by a given arbitration clause . . . .'" *BG Grp. PLC v. Republic of Arg.,* 572 U.S. 25, 34 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). If a court finds evidence of clear and unmistakable intent to arbitrate arbitrability, it must allow an arbitrator to decide issues of arbitrability. *See Belnap*, 844 F.3d at 1292. The Agreement at issue here provides:

> Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator. Likewise, procedural questions that grow out of the dispute and bear on the final disposition are also matters for the arbitrator. However, where a party has already initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g., one (1) year for filing a claim).

ECF No. 9-1 at 2-3. Thus, under the Agreement, the parties have clearly delegated issues of arbitrability to the arbitrator, and Plaintiff has not challenged the delegation provision specifically.

Although the parties have delegated issues of arbitrability to the arbitrator, the Court must resolve Plaintiff's first argument, because he disputes the formation of the Agreement. *See Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 299-300 (2010) (Disputes over the formation of the parties' arbitration agreement are "matters . . . the court must resolve."). However, Plaintiff's second argument—that the Agreement's one-year limitations provision, the parties' unequal bargaining power, and Defendant's illusory promises render the Agreement unconscionable—is for the arbitrator to decide. *See Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1267-68 (D. Colo. 2019) (holding that plaintiff's unconscionability arguments challenging validity of arbitration clause were for the arbitrator to decide); *see also Rent-A-Center*, 561 U.S. at 73-75 (holding that claims of unconscionability relating to the arbitration agreement generally and not the delegation clause specifically vests the arbitrator with the jurisdiction to address claims of unconscionability). Accordingly, the Court finds that the issue of unconscionability is for the arbitrator to decide.

5

### B. Formation of the Agreement

To determine whether a valid arbitration agreement exists, a court must apply state contract law principles. *Hardin v. First Cash Financial Services, Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). Under Colorado law, [t]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Pierce v. St. Vrain Valley School District RE–1J*, 981 P.2d 600, 603 (Colo. 1999). This means that the parties must have agreed upon all essential terms, and there must be a meeting of the minds. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986); *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. App. 2022).

#### 1. Meeting of the Minds

Plaintiff contends that there is no meeting of the minds with respect to the following "essential terms" of the Agreement: (1) the RRP rules; (2) the Claim Forms; and (3) the method by which HSS would prosecute its claims against an employee. ECF No. 12 at 4-6. The Court examines each in turn.

Plaintiff first argues that the parties could not have agreed to the RRP rules referenced throughout the Agreement because such rules do not exist. *Id.* at 4-5. Defendant states that the references to RRP rules are just another way of referencing the multi-step claims process outlined in the Agreement. *See* ECF No. 16 at 4. The body of the Agreement is located beneath a heading that reads "Responsive Resoluton [sic] Program, Alternative Dispute Resolution," ECF No. 9-1 at 1, which suggests that the terms of the Agreement are part of the "RRP." The Agreement outlines a multi-step process for dispute resolution, "which begins with claims review, then mediation, and, if

6

necessary, culminates in the use of binding arbitration." *Id.* at 2. Below the multi-step process, the Agreement states:

> A copy of the RRP Arbitration Rules are attached, and the AAA Employment Dispute Resolution Rules . . . are available for review on AAA's web site at www.adr.org. In the event of a conflict between the RRP Arbitration Rules and the AAA Employment Disputes Resolution Rules, the RRP Arbitration Rules will control.

*Id.* at 3. Plaintiff argues that without the separate RRP rules, "[Defendant] cannot prove binding rules for arbitration, negating the requisite meeting of the minds." ECF No. 12 at 5 (internal quotation marks omitted). The Court agrees that the language that the RRP Arbitration Rules "are attached" suggests that there should be a separate set of RRP rules. But Defendant concedes that there are no "attached" RRP rules, and Defendant is therefore not trying to enforce any rules that exist outside the Agreement. Plaintiff cites an unpublished case, *Vescent, Inc. v. Prosun Int'l, LLC*, No. 10-CV-01103-WYD-CVS, 2010 WL 4658862 (D. Colo. Nov. 9, 2010), for the proposition that without the RRP rules, there has been no meeting of the minds as to the essential term of what rules apply. In that case, however, the arbitration agreement did not identify *any* rules that would be applicable. *Id.* at *3. Here, Plaintiff is directed to the AAA Employment Dispute Resolution Rules. To the extent there is any ambiguity as to what the RRP rules are, ambiguity in the Agreement must be construed in favor of arbitration. *See Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003) ("If ambiguities are found in the arbitration agreement, we must afford the parties a presumption in favor of arbitration and resolve doubts about the scope of the arbitration clause in favor of arbitration."). The absence of separate "RRP rules" does not negate a meeting of the minds with respect to the terms included in the Agreement

7

because the Agreement plainly outlines the multi-step claims process to be followed and provides that the AAA Employment Dispute Resolution Rules will govern unless they conflict with the RRP rules. ECF No. 9-1 at 3. Since there are admittedly no RRP rules outside the Agreement, there can be no conflict and therefore the AAA Employment Dispute Resolution Rules will govern.

Plaintiff next argues that the "Claim Forms" referenced in the Agreement "appear not to exist," so there could be no meeting of the minds regarding how to initiate a claim. ECF No. 12 at 6. This argument also fails. The multi-step dispute resolution process references "Claim Forms" that should be sent to the RRP Program Administrator to initiate a claim. ECF No. 9-1 at 2. Plaintiff concludes that because he never received any Claims Forms, they must not exist. ECF No. 12 at 6. But Plaintiff does not put forth any evidence that he requested the Claim Forms from Defendant, so the conclusion that the Claims Forms do not exist is speculative at best. Regardless, the form of the claim does not materially change the process that Plaintiff agreed to when he signed the Agreement. Plaintiff agreed to follow the process outlined in the Agreement, and absent a specific Claim Form, he could have requested one or sought clarity from the RFP Program Administrator whose mailing address is provided in the Agreement. *See* ECF No. 9-1 at 3. Again, resolving any ambiguity in favor of arbitration, the Court finds that the absence of separate Claim Forms is not an essential term that would negate meeting of the minds.

Finally, Plaintiff argues that the Agreement is invalid because it does not include any "binding rules" for Defendant. *See* ECF 12 at 6. But, under the Agreement, Defendant agreed to "utilize the RRP for any claims against Employee." ECF No. 9-1 at 1. And as

discussed above, the Agreement provides that the parties are bound by the RRP rules (contained within the Agreement) *and* the AAA Employment Disputes Resolution Rules. There is nothing to suggest that the rules would not apply to Defendant. Defendant also admits in its reply that it is required to follow the same multi-step claims process as Plaintiff. *See* ECF No. 16 at 7. Thus, Plaintiff's argument that there are no "binding rules" for Defendant fails.

For the foregoing reasons, the Court finds that there was a meeting of the minds on the essential terms of the Agreement. The very case Plaintiff cited in support of his position instructs that the essential terms to an arbitration agreement are: "the intent to arbitrate (that the parties firmly desired to resolve all disputes without resort to litigation), the scope of the arbitration (what claims or controversies would be arbitrated), binding rules for the arbitration and the effect of the arbitration ruling (whether it is binding on the parties)." *Vescent*, No. 10-CV-01103-WYD-CVS, 2010 WL 4658862 at *3. The Agreement here contains these essential terms. It expresses the parties' clear intent to arbitrate, identifies the claims or controversies that would be arbitrated, identifies and links to the binding rules for the arbitration, and states that the arbitrator's decision is final and binding. *See* ECF No. 9-1. Plaintiff accepted the Agreement and its essential terms through his signature and acknowledgement of the same. *See id.* In consideration for signing the Agreement, Defendant agreed to utilize the RRP for any claims against Plaintiff and pay $25.00 of employees capped arbitration filing fee imposed by the AAA, as well as all other filing fees set forth by the AAA. *See id.* at 1. The Agreement signed by Plaintiff further states that "[t]he parties understand and agree that this Agreement

9

contains adequate consideration, the receipt and sufficiency of which is hereby acknowledged" and that "[Plaintiff] has been advised of his right to consult with an attorney of his choice regarding this Agreement." *Id.* Thus, an agreement to arbitrate was properly formed.

### 2.     Illusory Promise

Plaintiff next argues that Defendant's promise to "utilize the RRP for any claims against Employee," ECF No. 9-1 at 1, is illusory because the multi-step claim resolution process only exists on the employee side and the Agreement is silent as to claim resolution process Defendant must follow. ECF No. 12 at 6-7. Defendant contends that its obligations under the Agreement are the same as Plaintiff's in that it must follow the same multi-step claim resolution process. ECF No. 16 at 7. But even if the parties' claim resolution obligations differed, it would not render the Agreement illusory.

"Under Colorado law, every contractual obligation need not be mutual as long as each party has provided some consideration for the contract." *See Rains v. Foundation Health Systems Life & Health*, 23 P.3d 1249 (Colo. App. 2001). In *Rains*, the court of appeals rejected an argument that an arbitration provision was unenforceable where the obligation to arbitrate was not mutual. *Id.* at 1255. Here, the obligation to arbitrate is mutual, but the obligations regarding how to initiate a claim may differ slightly. Regardless, both parties made mutual promises in the Agreement, and a difference in obligations (to the extent there is a difference—which Defendant denies) does not render Defendant's promise to utilize the RRP illusory. *See City of Colorado Springs v. Mountain View Electric Association, Inc.*, 925 P.2d 1378, 1383 (Colo. App. 1995) ("A promise

10

exchanged for a promise imposes mutual obligations and is sufficient consideration to render a contract enforceable."); *see also Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1155 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013) (holding that under Colorado law, an arbitration provision is enforceable and not illusory even if a particular clause lacks mutuality). For the foregoing reasons, the Court finds that the Agreement is a valid and enforceable agreement to arbitrate. Accordingly, the limited discovery requested by Plaintiff is unnecessary.[2]

### C. Defendant's Request for Dismissal or Stay

Defendant requested that the case be dismissed or stayed in its entirety pending arbitration. *See* ECF No. 9 at 3, 5. The Court denies this request and instead administratively closes the case pursuant to D.C.COLO.LCivR 41.2. *See* 9 U.S.C. § 3 (providing, in pertinent part, that a court referring an issue to arbitration "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"); *Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987) (construing an order compelling arbitration and closing the case "as the practical equivalent of a stay"). "Because an administratively closed case 'still exists on the docket of the district court' it 'may be reopened upon request of the parties or on the court's own motion.'" *Patterson v. Santini*, 631 F. App'x 531, 534 (10th Cir. 2015)

---

[2] Under Fed. R. Civ. P. 26(d)(1), "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) unless . . . authorized by these rules, by stipulation, or by court order." Courts may permit such expedited discovery upon a showing of good cause. *See Pod-Nears v. Northern Feed & Bean of Lucerne Ltd.*, 204 F.R.D. 675, 676 (D. Colo. 2002). Good cause may be satisfied where a party seeks a preliminary injunction, where the party has asserted claims of infringement and unfair competition, or where physical evidence may be consumed or destroyed with the passage of time. *See Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) (collecting cases). This is not a scenario where good cause exists to depart from the usual discovery procedures, and regardless, the limited discovery Plaintiff requests would not change the Court's analysis.

11

(quoting *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004)); *see also* D.C.COLO.LCivR 41.2 ("A district judge . . . may order the clerk to close a civil action administratively subject to reopening for good cause.").

## IV.     CONCLUSION

For the reasons stated above, it is

ORDERED that Defendant's Motion to Compel Arbitration, ECF No. 9, is GRANTED IN PART, in that the Parties shall arbitrate their dispute, but it is DENIED IN PART, to the extent it requests that the Court dismiss this action or stay it pending arbitration; it is

FURTHER ORDERED that Plaintiff's amended Opposition to Defendant's Motion to Compel Arbitration or, in the Alternative, Permit Limited Discovery, ECF No. 13, which is largely duplicative of the original brief filed at ECF No. 12 and which was filed out of time, is STRICKEN; it is

FURTHER ORDERED that the Parties SHALL FILE a joint report regarding the status of arbitration within 30 days of the resolution of the claim in arbitration; it is

FURTHER ORDERED that, pursuant to D.C.COLO.LCivR 41.2, the Clerk of the Court SHALL ADMINISTRATIVELY CLOSE this case subject to reopening for good cause, such as after the ruling on arbitrability by the arbitrator or the issuance of the arbitration award, if appropriate; and it is

FURTHER ORDERED that any pending deadlines and hearings are VACATED.

DATED:  August 2, 2023

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge